```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-8-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA        :     INDICTMENT
:
            -v.-                :     S1 11 Cr. 161 (RPP)
:
WINIFRED JIAU,                  :
    a/k/a "Wini," and           :
DONALD LONGUEUIL,               :
:
            Defendants.         :
:
- - - - - - - - - - - - - - - - - X

## COUNT ONE

(Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury charges:

### Relevant Entities and Individuals

1.   At all times relevant to this Indictment, an expert networking firm in Mountain View, California (the "Firm") operated as a private company that paid employees at publicly traded companies and other individuals ("Firm Consultants") to provide information to money managers, including hedge funds, whose principal purpose was to purchase and sell securities to make money ("Firm Clients").  Firm Clients paid money to the Firm to gain access to Firm Consultants.

2.   At all times relevant to this Indictment, WINIFRED JIAU, a/k/a "Wini," the defendant, was a paid consultant for the Firm.  Unlike most other Firm Consultants, JIAU was listed on the

1

Firm's "private network," meaning that consultations with JIAU were limited to a select few Firm Clients.

3. At all times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1") worked as a portfolio manager in the hedge fund industry, including at two separate hedge funds located in New York, New York. CC-1 had access to WINIFRED JIAU, a/k/a "Wini," the defendant, through the Firm's private network.

4. At all times relevant to this Indictment, Noah Freeman worked in the hedge fund industry, first as a research analyst at a hedge fund located in Boston, Massachusetts, and subsequently as a portfolio manager at a Connecticut-based hedge fund. Freeman also had access to WINIFRED JIAU, a/k/a "Wini," the defendant, through the Firm's private network.

### The Jiau Insider Trading and Wire Fraud Scheme

5. From at least in or about 2006, through in or about late 2008, WINIFRED JIAU, a/k/a "Wini," the defendant, and others known and unknown, participated in a scheme to defraud certain public companies of material, nonpublic information (the "Jiau Inside Information"). Specifically, JIAU obtained detailed earnings, revenue, gross margins, and/or other financial information from employees at public companies (the "Jiau Inside Sources"), including Marvell Technology Group, Ltd. ("Marvell")

2

and NVIDIA Corporation ("NVIDIA"), who disclosed the Jiau Inside Information in violation of duties of trust and confidence that the Jiau Inside Sources owed to their respective employers and the shareholders of those companies.

6. After obtaining the Jiau Inside Information from the Jiau Inside Sources, WINIFRED JIAU, a/k/a "Wini," the defendant, provided the Jiau Inside Information to CC-1 and Freeman. As JIAU well knew, the Jiau Inside Information that she provided to CC-1 and Freeman was obtained for the purpose of executing and causing others to execute securities transactions based, in whole or in part, on the Jiau Inside Information.

7. In exchange for the Jiau Inside Information provided by WINIFRED JIAU, a/k/a "Wini," the defendant, CC-1 and Freeman caused their respective hedge funds to pay the Firm either through direct payments to the Firm or through soft dollar payments made through the Firm's designated broker-dealer. The Firm, in turn, made monthly payments to JIAU of as much as $10,000.

### The Conspiracy

8. From at least in or about 2006, through in or about late 2008, in the Southern District of New York and elsewhere, WINIFRED JIAU, a/k/a "Wini," the defendant, and others known and unknown, unlawfully, willfully, and knowingly did

3

combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, (1) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and (2) wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

9. It was a part and an object of the conspiracy that WINIFRED JIAU, a/k/a "Wini," the defendant, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon any person,

all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

10.  It was further a part and an object of the conspiracy that WINIFRED JIAU, a/k/a "Wini," the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

**Means and Methods of the Conspiracy**

11.  Among the means and methods by which WINIFRED JIAU, a/k/a "Wini," the defendant, and her co-conspirators would and did carry out the conspiracy were the following:

a.  JIAU obtained the Jiau Inside Information from employees at public companies, who disclosed the information in violation of fiduciary and other duties of trust and confidence owed to the public companies.

b.  Having obtained the Jiau Inside Information from employees at public companies, JIAU then provided the Jiau

5

Inside Information to certain Firm Clients understanding that the Firm Clients wanted the Jiau Inside Information for purposes of executing securities transactions.

c.  Firm Clients that obtained the Jiau Inside Information from JIAU executed securities transactions based, in whole or in part, on the Jiau Inside Information.

### Overt Acts

12.  In furtherance of the conspiracy, and to effect the illegal objects thereof, WINIFRED JIAU, a/k/a "Wini," the defendant, and her co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.  On or about May 23, 2008, JIAU had a telephone conversation with Freeman and CC-1, who was located in New York, New York, during which she provided them the Jiau Inside Information about, among other companies, Marvell, a public company that trades over the NASDAQ.

b.  On or about May 23, 2008, CC-1 caused the hedge fund at which he was employed, located in New York, New York, to purchase over 118,000 shares of stock in Marvell.

c.  In or about May 2008, JIAU received $10,000 for her consultations with CC-1 and Freeman.

(Title 18, United States Code, Section 371.)

## COUNT TWO

(Securities Fraud)

The Grand Jury further charges:

13. The allegations contained in paragraphs 1 through 7, 11, and 12 are repeated and realleged as though fully set forth herein.

14. In or about May 2008, in the Southern District of New York and elsewhere, WINIFRED JIAU, a/k/a "Wini," the defendant, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, JIAU provided material, nonpublic information regarding Marvell to CC-1 and Freeman for the purpose of executing and

causing others to execute securities transactions.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5,
and Title 18, United States Code, Section 2.)

## COUNT THREE

(Conspiracy to Commit Securities Fraud and Wire Fraud)

The Grand Jury further charges:

15. The allegations contained in paragraphs 1 through 7, 11 and 12 are repeated and realleged as though fully set forth herein.

### Relevant Entities and Individuals

16. At all times relevant to this Indictment, DONALD LONGUEUIL, the defendant, worked in the hedge fund industry, primarily specializing in research and trading in the technology and semiconductor sectors.

17. From in or about June 2004, through in or about June 2008, DONALD LONGUEUIL, the defendant, was employed as a research analyst and managing director at a hedge fund located in Connecticut ("Hedge Fund A"). In or about June 2008, LONGUEUIL left Hedge Fund A to work as a portfolio manager at the New York office of another Connecticut-based hedge fund ("Hedge Fund B").

### The Longueuil Insider Trading and Wire Fraud Scheme

18. From at least in or about 2006, through in or about 2010, DONALD LONGUEUIL, the defendant, and others known and

unknown, participated in a scheme to defraud certain public companies of material, nonpublic information (the "Longueuil Inside Information"). Specifically, LONGUEUIL obtained the Longueuil Inside Information both from employees at public companies, who disclosed the information in violation of fiduciary and other duties of trust and confidence owed to the public companies, and from independent research consultants who obtained material, nonpublic information from employees at public companies on behalf of LONGUEUIL.

19. After obtaining the Longueuil Inside Information from the public company employees and other sources, DONALD LONGUEUIL, the defendant, provided the Longueuil Inside Information to Freeman and CC-1. In exchange, Freeman and CC-1 shared with LONGUEUIL other material, nonpublic information they obtained from their own sources, including the Jiau Inside Information which they received from WINIFRED JIAU, a/k/a "Wini," the defendant. In fact, LONGUEUIL communicated regularly with Freeman and/or CC-1 in order to share the material, nonpublic information each learned from his respective sources. These communications often occurred over the telephone, as well as through e-mails and instant message communications.

20. As part of the scheme, DONALD LONGUEUIL, the defendant, and his co-conspirators undertook efforts to conceal

9

the scheme from regulatory and law enforcement agencies, including by (a) saving electronic records evidencing their communications with company insiders on external flash drives or other external electronic data storage devices, rather than on the servers maintained by their respective hedge funds, and (b) using personal e-mail accounts to communicate rather than the hedge fund e-mail accounts.

21. In furtherance of the scheme, on or about November 19, 2010, after reading in the press that the Federal Bureau of Investigation and a federal grand jury had been conducting an investigation into insider trading through the Firm, DONALD LONGUEUIL, the defendant, attempted to destroy digital records and/or documents reflecting his receipt of the Longueuil Inside Information from employees at public companies and his sharing of that information with Freeman and CC-1.

22. DONALD LONGUEUIL, the defendant, along with Freeman and CC-1, used the Longueuil Inside Information and the Jiau Inside Information they obtained for the purpose of executing and causing others to execute securities transactions based, in whole or in part, on such information.

### The Conspiracy

23. From at least in or about 2006, through in or about 2010, in the Southern District of New York and elsewhere,

DONALD LONGUEUIL, the defendant, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, (1) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2; and (2) wire fraud, in violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

24. It was a part and an object of the conspiracy that DONALD LONGUEUIL, the defendant, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which

11

operated and would operate as a fraud and deceit upon any person, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.

25. It was further a part and an object of the conspiracy that DONALD LONGUEUIL, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate commerce writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Means and Methods of the Conspiracy

26. Among the means and methods by which DONALD LONGUEUIL, the defendant, and his co-conspirators would and did carry out the conspiracy were the following:

    a. LONGUEUIL obtained the Longueuil Inside Information both directly from employees at public companies, who disclosed the information in violation of fiduciary and other duties of trust and confidence owed to the public companies, and from independent research consultants who obtained the Longueuil

Inside Information from employees at public companies on behalf of LONGUEUIL.

      b.    LONGUEUIL shared the Longueuil Inside Information he obtained with Freeman and CC-1. In exchange, Freeman and CC-1 shared with LONGUEUIL other material, nonpublic information that they obtained from their own respective sources. For example, Freeman and CC-1 shared with LONGUEUIL the Jiau Inside Information they obtained from WINIFRED JIAU, a/k/a "Wini," the defendant, including detailed earnings, revenue, gross margins, and/or other financial information of public companies prior to the companies' public earnings announcements.

      c.    LONGUEUIL, Freeman, and CC-1 used the Longueuil Inside Information and the Jiau Inside Information they obtained for the purpose of executing and causing others to execute securities transactions based, in whole or in part, on such information.

### Overt Acts

27. In furtherance of the conspiracy, and to effect the illegal objects thereof, DONALD LONGUEUIL, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

      a.    On or about May 23, 2008, WINIFRED JIAU, a/k/a "Wini," the defendant, had a telephone conversation with

Freeman and CC-1, who was located in New York, New York, during which she provided them the Jiau Inside Information about, among other companies, Marvell, a public company that trades over the NASDAQ.

   b. On or about May 23, 2008, LONGUEUIL obtained the Jiau Inside Information from CC-1.

   c. On or about May 28, 2008, JIAU had a telephone conversation with Freeman and CC-1.

   d. In or about late May 2008, LONGUEUIL obtained the Jiau Inside Information from Freeman.

   e. On or about May 28, 2008, LONGUEUIL caused portfolio managers at Hedge Fund A to purchase approximately 400,000 shares of stock in Marvell based, in whole or in part, on the Jiau Inside Information.

(Title 18, United States Code, Section 371.)

### COUNT FOUR

(Securities Fraud)

The Grand Jury further charges:

28. The allegations contained in paragraphs 1 through 7, 11, 12, 16 through 22, 26 and 27 are repeated and realleged as though fully set forth herein.

29. In or about May 2008, in the Southern District of New York and elsewhere, DONALD LONGUEUIL, the defendant,

unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, LONGUEUIL caused Hedge Fund A to execute securities transactions in Marvell stock based on material, nonpublic information he received from CC-1 and Freeman regarding Marvell.

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5,
and Title 18, United States Code, Section 2.)

## COUNT FIVE

(Obstruction of Justice)

The Grand Jury further charges:

30. In or about November 2010, in the Southern District of New York and elsewhere, DONALD LONGUEUIL, the

defendant, unlawfully, willfully and knowingly, corruptly altered, destroyed, mutilated, and concealed a record, document, and other object, and attempted to do so, with the intent to impair the object's integrity and availability for use in an official proceeding, and otherwise obstructed, influenced, and impeded an official proceeding, and attempted to do so, to wit, LONGUEUIL destroyed a flash drive and external hard drives, in New York, New York, after reading an article about a federal grand jury investigation concerning insider trading.

(Title 18, United States Code, Sections 1512(c) and 2.)

## FORFEITURE ALLEGATION

31. As a result of committing one or more of the foregoing securities and wire fraud offenses alleged in Counts One through Four of this Indictment, WINIFRED JIAU, a/k/a "Wini," and DONALD LONGUEUIL, the defendants, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the securities and wire fraud offenses, including but not limited to a sum of money in United States currency which was derived from proceeds traceable to the commission of the wire fraud and securities fraud offenses.

### Substitute Assets Provision

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 28, United States Code, Section 2461; Title 18, United States Code, Sections 371, 1349 and 2; Title 15, United States Code, Sections 78j(b) and 78ff; and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2.)

_____  
Foreperson

_____  
PREET BHARARA  
United States Attorney

17

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

WINIFRED JIAU and
DONALD LONGUEUIL,

Defendants.

INDICTMENT

S1 11 Cr. 161 (RPP)

(18 U.S.C. §§ 2, 371, 1512(c); Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5)

PREET BHARARA
United States Attorney.

A TRUE BILL

*[signature]*
Foreperson.

3-8-11 Filed Indictment.          19          Fox
                                              USM.J