UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
UNITED STATES OF AMERICA,

              -v-                     :     11 Cr. 161 (JSR)

WINIFRED JIAU,                      :        <u>OPINION</u>

              Defendant.
------------------------------------- x

JED S. RAKOFF, U.S.D.J.

      On March 28, 2011, defendant Winifred Jiau moved to suppress certain recordings made by one Kurt Haatch of Jiau's telephone conversations with one Samir Barai, certain contemporaneous "instant messaging" between Barai and one Jason Pflaum while Pflaum was listening in on phone calls between Barai and Jiau, and all evidence derived from the recordings and instant messaging notes. On April 27, 2011, after receiving written submissions from the parties, the Court heard oral argument on the motion to suppress. Following oral argument, the Court indicated that it wanted to hear live testimony from Pflaum. The Court also directed both sides to submit additional briefs on a statutory argument raised by defendant, for the first time, at oral argument on April 27, 2011. On May 12, 2011, after hearing testimony from Pflaum, the Court denied defendant's motion to suppress from the bench. <u>See</u> Tr., 5/12/2011. On May 13, 2011, the Court confirmed its oral ruling in a summary written order. <u>See</u> Order dated 5/13/10 (S.D.N.Y. D.I. 80). This Opinion explains the reasons for that ruling.

By way of background, on March 8, 2011 a grand jury returned Superseding Indictment S1 11 Cr. 161 (the "Indictment") against defendants Winifred Jiau and Donald Longueuil.[1] Count One of the Indictment charged Jiau with conspiring to commit securities fraud and wire fraud from in or about 2006 through in or about late 2008, in violation of 18 U.S.C. § 371. Specifically, Count One alleged that from in or about 2006 through in or about late 2008, Jiau agreed with others to unlawfully obtain material, nonpublic information from employees of two publicly-traded companies for the purpose of executing securities transactions. Count Two charged that Jiau, in execution of one part of that scheme involving one of the companies, committed substantive securities fraud in or about May 2008, in violation of 15 U.S.C. §§ 78j(b) & 78ff.[2]

Prior to the return of the Indictment, Jiau was arrested on a criminal complaint that indicated that these allegations against Jiau were partially based on certain telephone conversations between her and two co-conspirators ("CC-1" and "CC-2"). These conversations were allegedly overheard by a cooperating witness ("CW-1"), who was on the phone exchanging contemporaneous instant messages with CC-1. The Government also obtained from CW-1 recordings of two other

---

[1] Defendant Longueuil pleaded guilty to Counts Three and Four of the Indictment on April 28, 2011. See Tr., 4/28/2011.

[2] On June 20, 2011, Jiau was convicted of both counts. Her sentencing is scheduled for September 21, 2011.

2

conversations between Jiau and the alleged co-conspirators that occurred in August 2008. Subsequently, CC-1 was identified as Samir Barai, a hedge fund manager and founder of Barai Capital, CC-2 was identified as Noah Freeman, a portfolio manager at two separate hedge funds, and CW-1 was identified as Pflaum, who was at the time of the recordings a technology analyst at Barai Capital. At the limited evidentiary hearing conducted on May 12, 2011, it was revealed that Kurt Haatch, another analyst, was the individual who had recorded two of Jiau's conversations and that Pflaum had obtained the recordings from Haatch. See Tr., 5/12/2011, at 15.

As part of the instant motion practice, Jiau averred that she did not consent to, and was never aware of, anyone listening in on and/or recording her conversations with Barai. See Declaration of Winifred Jiau, dated May 3, 2011 ("Jiau Decl.") ¶ 3. She therefore moved to suppress the recordings, the instant messages, and the fruits thereof, all pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-22.[3]

---

[3] Specifically, defendant moved pursuant to § 2518(10)(a) of Title III, which provides that "[a]ny aggrieved person in any trial, hearing, or proceeding in or before any court ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter ... on the grounds that ... the communication was unlawfully intercepted." 18 U.S.C. § 2518(10)(a) (emphasis supplied). Arguably, this provision is not directly applicable where, as here, the interceptions were not made "pursuant" to Title III. However, the Government did not raise this objection, nor, it appears, has it been addressed in any reported decision. Even in the absence of § 2518(10)(a), a

3

Section 2511 of Title III makes it unlawful for "any person" to intentionally "intercept" any "wire, oral, or electronic communication" or use or endeavor to use the contents of any such communication, knowing or having reason to know that it was intercepted in violation of the statute. 18 U.S.C. § 2511(a)(a)-(d). However, an interception will not be considered unlawful if, for example, (i) a party to the communication consented to the interception, see 18 U.S.C. § 2511(2)(d), or (ii) the interception occurred in the ordinary course of business, see 18 U.S.C. § 2510(5)(a). But there is a further qualification to the first exception: even when one party to the communication consents to the interception, if a communication is "intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution of laws of the United States or of any State," see 18 U.S.C. § 2511(2)(d), the interception will still be considered unlawful.[4]

---

suppression motion might still be appropriate in effectuation of § 2515 of Title III, which provides that: "Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial ... if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.

[4] Section 2511(2)(d) provides:

It shall not be unlawful under this chapter ... for a person not acting under color of law to intercept a wire, oral, or electronic communication where one of the parties to the communication has given prior consent to such interception <u>unless such communication is intercepted for the purpose of</u>

In connection with the suppression hearing, Jiau principally argued that the instant messages and the recordings must be suppressed because (1) the Government had not met its burden of demonstrating that Samir Barai consented to the interceptions, and (2) in any event, the communications were "intercepted for the purpose of committing [a] criminal or tortious act" since Jiau's conversations were recorded so that Barai could refer back to the tapes to further Barai's own insider trading scheme.

Turning first to whether the Government met its burden of proving that Samir Barai consented to the instant messaging, the Court concluded that the evidence established that Barai consented to Pflaum's being on the phone during his conversations with Jiau and making these contemporaneous messages. Indeed, the messages themselves confirm that Barai knew and accepted that Pflaum was on the line. Moreover, Pflaum, whom the Court found credible, testified at the suppression hearing that Barai requested that Pflaum be on the line and take notes during the calls because of Barai's hearing impairment. See Tr., 5/12/2011, at 6-7. There was no material evidence to the contrary.

With respect to the two conversations recorded by Kurt Haatch, Jason Pflaum's testimony similarly established that Barai

---

committing any criminal or tortious act in violation of the Constitution of laws of the United States or of any State.

See 18 U.S.C. § 2511(2)(d) (emphasis supplied).

5

consented to the recordings. Specifically, Pflaum testified that because Pflaum "had a [time] conflict" and was unable to listen-in on the calls, Samir Barai asked Haatch to record the conversations so that, if necessary, Pflaum could review the conversations and make sure Barai "had all the details" of the conversations. See Tr., 5/12/2011 at 19-20.

Turning to Jiau's argument that the evidence must be suppressed because the recordings were made in furtherance of the insider trading scheme, the Court concluded that the recordings were not made "for the purpose of committing any criminal or tortious act" within the meaning of 18 U.S.C. § 2511(2)(d). As an initial matter, the Court found that the immediate purpose of making the recordings and taking notes of the conversations was not to commit insider trading but merely to create a record of all of the information being provided to Samir Barai, for whatever purpose, in light of Barai's hearing impairment. As Jason Pflaum testified, Pflaum was often asked to be on the line and take notes during Barai's calls "to help [Barai] with the flow of conversation" and so that "if [Barai] missed a point of nuance to a conversation, [Pflaum] could send him an instant message and help him ... keep on with the conversation." See Tr., 5/12/2011, at 7. Similarly, the recordings made by analyst Kurt Haatch were created so that Pflaum could review the recordings and make sure Barai "had all the details" and to make sure Haatch "didn't miss information" and "could go back and listen and pick up on the

details he might have missed." Id. at 19-20. Thus, the notes and the recordings were not created for the purpose of committing a crime.

Moreover, even assuming arguendo that the recordings were made in furtherance of the insider trading scheme, the Court found that suppression would still be inappropriate in this case as Jiau's interpretation of the "criminal or tortious act" exception enumerated in 18 U.S.C. § 2511(2)(d) is much too broad. After considering the text, legislative history, and purpose of 18 U.S.C. § 2511(2)(d), see generally Todd D. Rakoff, Statutory Interpretation as a Multifarious Enterprise, 104 Nw. U. L. Rev. 1559 (2010), as well as the cases interpreting this provision, the Court concluded that the "criminal or tortious act" exception was intended to ensure that the consenting party did not intercept and record a conversation with the intent to harm the non-consenting party or a third party. Thus, contrary to Jiau's suggestion, the provision was not intended to suppress all recordings that were arguably made in furtherance of a crime, but merely to suppress those recordings created with the intent to blackmail, harass, or otherwise harm the non-consenting party or a third party.

As noted by Judge Buchwald, in In re DoubleClick Inc. Privacy Litigation, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001), the "crime or tortious act" exception was not included in the original Wiretap Act,

but was added in response to concerns that recordings could be used for blackmail:

> The Wiretap Act originally exempted from its prohibition any interception of a wire or oral communication where one of the parties to the communication consented. See 2 U.S. Code Cong. & Ad. News, 90th Cong., 2d Sess., p. 2182 (1968). However, Senator Phillip Hart objected that the exemption was too permissive because ... [h]e feared that parties would use secret recordings for "insidious purposes such as blackmail, stealing business secrets, or other criminal or tortious acts in violation of Federal or State laws." Id. at 2236. Senators Hart and McClellan proposed an amendment to narrow the exemption to acts with "criminal, tortious or injurious" purposes, part of which was enacted as § 2511(2)(d). The key distinction Senator Hart suggested should distinguish permissible from impermissible one-party consent recordings by private citizens was whether the defendant's intent in recording was to injure another party. Compare 114 Cong. Rec. 14694-14695 (May 23, 1968) ("Such one-party consent is also prohibited when the party acts in any way with an intent to injure the other party to the conversation in any other way ... For example, ... for the purpose of blackmailing the other party, threatening him, or publicly embarrassing him") with S. Rep. No. 90-1097 (1968) at 2236-37 ("There are, of course, certain situations in which consensual electronic surveillances may be used for legitimate purposes ... [as with recordings made] without intending in any way to harm the nonconsenting party.").

In re DoubleClick Inc. Privacy Litigation, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001). See also United States v. Underhill, 813 F.2d 105, 110 (6th Cir. 1987) (holding that the purpose of the criminal or tortious exception was "defensive ... to protect a nonconsenting party to an intercepted conversation from the danger that another party might use the contents for some criminal purpose such as blackmail or some other tortious or injurious purpose"); In re High Fructose Corn Syrup Litigation, 216 F.3d 621 (7th Cir. 2000) (concluding that purpose of recording criminal conversations could

not be considered criminal or tortious under § 2511(2)(d) where motive for recording was to "elude detection of ... fraud against [Archer Daniels Midland Company ("ADM")] by becoming a valued FBI informant" and not "to blackmail ... or extort money from ADM").

In support of her interpretation of § 2511(2)(d), Jiau cited United States v. Vest, 639 F. Supp. 899 (D. Mass. 1986), which interprets § 2511(2)(d) to "forbid[] the recording of communications between private persons by or with the consent of one of the parties when it is shown either (1) that the primary motivation, or (2) that a determinative factor in the actor's motivation for intercepting the conversation was to commit a criminal, tortious, or other injurious act." Id. at 904. In Vest, the defendant police officer moved to suppress a tape recording made by his co-defendant Jesse James Waters. The tape recording documented a meeting between Vest and Waters at which Waters delivered to Vest $35,000 to be paid to another police officer, Frank Tarantino. The district court granted defendant's motion to suppress the recording because it found that Waters's "sole purpose in making the tape was to make a record of the payment -- the practical equivalent of a 'receipt,'" that Waters wanted a receipt to create a "to force Tarantino to fulfill his end of the bargain," and that "[s]uch a purpose in recording the conversation is in furtherance of the criminal conspiracy and is a purpose to commit a criminal act." Id. 905-08.

The Court concluded that <u>Vest</u> did not help Jiau for two reasons. First, as the Court observed previously, it is not clear that the "primary motivation" or even a "determinative factor" of making the recordings of Jiau's conversations was in order to commit insider trading. As Pflaum testified, it was because of Barai's hearing impairment in general that Barai routinely had his employees transcribe and/or record his telephone conversations. Second, the facts of <u>Vest</u> are actually consistent with this Court's interpretation of § 2511(2)(d) since the recording at issue in <u>Vest</u> was created in order to blackmail the non-consenting party. Indeed, the district court in <u>Vest</u> found that the tape was created so that Waters could "force Tarantino to fulfill his end of the bargain." <u>Id.</u> at 907. In the instant case, the recordings were not made in order to harm Jiau or anyone else for that matter. Rather, they were made to create a record of all of the information conveyed to Barai -- information he may have missed because of his hearing impairment. Thus, the Court concluded that the "criminal or tortious act" exception does not here apply.[5]

---

[5] The Court also takes note that, in any event, there is a serious question as to whether § 2511(2)(d) protects the privacy interests of co-conspirators. Indeed, the Sixth Circuit has held that § 2511(2)(d) "was not intended to protect wrongdoers whose criminal activity is tape recorded by their own confederate." <u>Traficant v. Commission of IRS</u>, 884 F.2d 258, 266 (6th Cir. 1989). <u>See also</u> <u>United States v. Underhill</u>, 813 F.2d 105 (6th Cir. 1987)(suggesting that since a member of the conspiracy is "bound by the acts of his co-conspirators, [he] may be held to have waived his right of privacy in communications made in furtherance of the purposes of the conspiracy" (citing <u>Pinkerton</u>

Independent of all this, Pflaum's testimony established that the recordings were made in the ordinary course of business at Barai Capital, <u>id.</u> at 12-13, which, by itself, would be sufficient to overcome suppression.  <u>See</u> 18 U.S.C. § 2510(5)(a).

Accordingly, the Court confirms its oral ruling of May 12, 2011 and denies Jiau's motion to suppress.  The Clerk of the Court is hereby directed to close document numbers 33, 35, 58, and 60 on the docket of the case.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       June 29, 2011

---

<u>v. United States</u>, 328 U.S. 640, 646-48 (1946))).  Thus, while the Court finds that it does not need to reach this question in deciding Jiau's motion to suppress, it notes that even if Jiau's interpretation of § 2511(2)(d) were correct, it is far from clear that § 2511(2)(d) was ever intended to protect a conspirator such as Jiau from suppressing recordings of conversations with her co-conspirator.

11